## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIE LEE WILSON AND<br>3810 Streamwood Drive,<br>Hazelcrest, Illinois 60429.<br><br>WILLIE WILSON 2016<br>345 East Wacker Dr., Suite 4601,<br>Chicago, Illinois, 60601<br><br>Plaintiffs,<br><br>v.<br><br>DNC SERVICES CORPORATION,<br>d/b/a DEMOCRATIC NATIONAL<br>COMMITTEE,<br>430 S. Capitol Street, S.E.<br>Washington, D.C. 20004<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br><br>_____ |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs, WILLIE WILSON AND WILLIE WILSON 2016, by and through undersigned counsel, and hereby file this Complaint for Damages against **DNC SERVICES CORPORATION, d/b/a DEMOCRATIC NATIONAL COMMITTEE** (hereinafter referred to as "the DNC") on the following grounds: common law breach of implied contract, promissory estoppel and race discrimination in violation of 42 U.S.C. §§ 1981 *et seq.* and §1985.

## NATURE OF THE CASE

Willie Lee Wilson, a Chicago based African-American entrepreneur, philanthropist, and religious motivational speaker, qualified and ran for President of the United States in the 2016 presidential election via his Presidential Campaign Committee. (See Exhibit "A", FEC Form 1).

Defendant, the Democratic National Committee, structures and facilitates Democratic candidates' presidential campaigns throughout various state primary elections and the national Democratic convention in which its party's presidential candidate is selected.  Upon registering and qualifying as a national presidential Democratic candidate, and as a stalwart party supporter for decades, Candidate Wilson accepted the DNC's campaign conditions, rules and regulations. Accordingly, he, like other candidates, expected the DNC's support, logistical assistance, guidance, resources, and access to certain information for his campaign.  While requiring Candidate Wilson to accept its conditions and to follow its rules and regulations, the DNC nevertheless met his campaign with coldness and adversity.  It intentionally denied him equal logistical assistance and guidance, resources, and access to certain information while simultaneously providing such to similarly situated White presidential candidates.

## JURISDICTION AND VENUE

1.     There are two (2) sources of subject matter jurisdiction in this Court.  Firstly, the parties' citizenship is completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs as per 28 U.S.C. §1332.  Plaintiff is a resident of the State of Illinois.  The Defendant is a resident of the District of Columbia ("hereafter "DC") by virtue of its incorporation in that jurisdiction, and maintains its principal place of business within DC. Secondly, this matter involves rights and privileges afforded to Plaintiffs under federal law and adjudication of those rights involves a federal question, per 28 U.S.C. §1331.

2.     This Court enjoys venue because: (1) Defendant's principal place of business is in, and the acts complained of occurred, in DC, among other places.

## THE PARTIES

3.      Plaintiff, WILLIE LEE WILSON, (hereinafter "Candidate Wilson") is an African-American individual who resides at 3810 Streamwood Drive, Hazelcrest, Illinois 60429. Plaintiff, WILLIE WILSON 2016, (hereinafter referred to as "the Campaign Committee") is Plaintiff's campaign committee.  It was formally registered with the Federal Elections Commission ("FEC") for purposes of qualifying for the 2016 campaign for the Office of the President of the United States.  Its principal place of business was located at 345 East Wacker Dr., Suite 4601, Chicago, Illinois, 60601.

4.      Defendant DNC Services Corporation, d/b/a Democratic National Committee (the "DNC") at all times relevant hereto was, and is, a not-for-profit corporation organized under the laws of the District of Columbia. It is the formal governing body for the United States Democratic Party.   As such, it coordinates strategy to support Democratic Party candidates throughout the country for local, state, and national office. It also organizes the Democratic National Convention held every four (4) years to nominate and confirm a candidate for president, and to formulate the party platform. The DNC is composed of the chairs and vice-chairs of each state Democratic Party committee and over 200 members elected by Democrats in all 50 states and the territories. Its chairperson is elected by the committee. The DNC was established at the 1848 Democratic National Convention.[1] The DNC's main counterpart is the Republican National Committee. The DNC, as a non-governmental entity, offers logistical support to the particular campaign activities of its party's political candidates and thusly creates a contractual relationship between itself and the party's varied candidates.

## FACTS COMMON TO ALL CLAIMS

### Candidate Willie Lee Wilson's Rags to Riches Story

5.      Candidate Willie Lee Wilson hails from humble beginnings in the state of Louisiana, where his father was a sharecropper.  As a teenager, he worked in cotton and sugar cane fields and eventually migrated to Chicago, Illinois where with direct assistance from Ray Kroc, the then national Chief Executive Officer of McDonald's Corporation, he was able to open his first McDonald's Restaurant.  Candidate Wilson arose from sweeping floors and flipping burgers in McDonald's restaurants to owning five (5) McDonald's restaurants, and ownership of a distribution company with offices in Shanghai and Beijing, China. Wilson is the recipient of a Doctor of Divinity degree from Mt. Carmel Theological Seminary, a Doctor of Humane Letters from Chicago Baptist Institute International, Honorary Doctorate in Humanitarianism from Swisher Bible College and a Doctorate in Humanitarianism from Denver Institute of Urban Studies and Adult College.

6.      Candidate Wilson, a motivational speaker with a strong Christian faith, is a strong advocate of governmental accountability, equal justice, business development and social and economic opportunity.  The Wall Street Journal described him as follows: "Mr. Wilson is a rare bird on the American landscape- a self-made black millionaire and philanthropist.  Neither a sports hero nor a celebrity, he has made his money the old-fashioned way, as a quintessential can-do American in an America that hasn't always been kind to his aspirations."

7.      Given his African-American background, and his message, which embraced his religious convictions and beliefs, Candidate Wilson's Presidential campaign presented a threat to the DNC leadership's intended objectives, which was to ensure Hillary Clinton's nomination as the democratic presidential candidate.  Candidate Wilson's candidacy potentially attracted

prospective African-American and other voters away from Hillary Clinton in multiple close political races, and particularly in the ten (10) states in which Plaintiff qualified to be on the presidential ballot.

8.      The DNC was fully apprised of Candidate Wilson's candidacy and understood the implications of an African-American "rags to riches" candidate with a strong Christian background and keen sensibility to working and middle-class Americans, and in particular African-American voters.

9.      DNC leadership thus viewed Mr. Wilson's race and the potential racial implications of his candidacy as a threat that needed to be constrained and nipped in the proverbial bud.   Hence, it imposed a racially biased double standard in its treatment of Candidate Wilson's campaign, which stifled and contained its development.   The DNC's actions thus violated anti-discrimination laws rooted in 42 USC Section 1981, et seq. 1995, as amended.

### Candidate Willie Lee Wilson and the DNC

10.     On May 13, 2015, the Federal Elections Commission (hereafter "FEC") formally accepted registration of the Plaintiffs' Campaign Committee

11.     The DNC established a set of conditions and rules which any Democratic Party candidate necessarily agreed to be bound.  Upon establishing his candidacy, Candidate Wilson accepted the DNC's terms and conditions for running as a democratic candidate for President of the United States.

12.     As consideration for a candidate's acceptance, the DNC accorded certain formalities, resources, logistical guidance and information to its party's candidates in the process of the candidate seeking access to state ballots, which is determined by state democratic parties in consultation with the DNC.

13.     The DNC Voter Data File System is one such example of the resources that it provides to candidates.  This Data File System is a vital information composite and national list of all registered Democrats, which candidates use for purpose of voter education, voter outreach, voter registration, and get out the vote ("GOTV") efforts.

14.     The DNC also facilitates candidate meetings and attendance at conventions and forums.

15.     Additionally, at all times referenced herein, Defendant DNC maintained an antidiscrimination policy and practice, which prohibited among other things, racial discrimination in its rules, policies, and the provision of its services and resources.

16.     Section VI of the DNC's official Call for the 2016 Democratic National Convention defines the term "presidential candidate" as follows:

> The term "presidential candidate" herein shall mean any person who, as determined by the National Chairperson of the Democratic National Committee, has accrued delegates in the nominating process and plans to seek the nomination, has established substantial support for his or her nomination as the Democratic candidate for the Office of the President of the United States, is a bona fide Democrat whose record of public service, accomplishment, public writings and/or public statements affirmatively demonstrates that he or she is faithful to the interests, welfare and success of the Democratic Party of the United States, and will participate in the Convention in good faith. (See Exhibit "G", Section VI, p. 7).

17.     At all times referenced herein Candidate Wilson's campaign committee was represented by attorney Andrew Finko ("hereafter "Attorney Finko")

18.     By letter dated May 29, 2015, Attorney Finko formally notified the DNC of the Plaintiff's registration with the FEC and sought campaign support and general information on the Democratic Party's nominating process. (See Exhibit "B").

**The DNC's Racial Discrimination Against Candidate Wilson**

19.     Attorney Finko's introductory May 29, 2015 letter also introduced the DNC to Candidate Wilson's background.

20.     This was the first indication of the DNC's coolness to his campaign.  The DNC neither acknowledged his letter; nor did it respond to it.

21.     On July 6, 2015, Attorney Finko sent an email to Amy Dacey, (hereafter "Ms. Dacey") the DNC's Chief Executive Officer, pertinent to his earlier May 29th correspondence hoping to engender a more meaningful and warmer response.  (See Exhibit "C").

22.     On July 7, 2015, Ms. Dacey responded for the very first time to Candidate Wilson's request for information and assistance by email. (See Exhibit "D").

23.     In this email, she provided the Rules on Delegate Selection, the Delegate Allocation Chart, etc.

24.     The DNC, by way of her correspondence, promised to provide assistance to Candidate Wilson in the form of introductions to State Party officials; logistical resources, and general political assistance for his emerging Presidential campaign.

25.     She made no mention, however, about the DNC's Voter Data File System.

26.     Candidate Wilson relied upon Ms. Dacey's promises and representations.

27.     In reliance upon these promises and representations he sought to organize and develop his national campaign in which he personally invested considerable resources.

28.     At the earliest stages of his campaign Candidate Wilson experienced additional DNC resistance when his campaign sought to participate in State and DNC sponsored events in the primary election processes.

29.     Upon information and belief, with the support and encouragement of the DNC, State party officials repeatedly chilled Candidate Wilson's campaign efforts.

30.     Democratic State Party officials repeatedly told him and his campaign workers that the DNC had advised them that he was not a DNC "sanctioned" candidate.

31.     After encountering several apparent exclusionary practices, on August 12, 2015, Mr. Wilson issued a press release in which he publicly challenged the discriminatory treatment that he experienced at the hands of the DNC.  (See Exhibit "E").

32.     In August, 2015, the DNC held a weekend summer conference in Minneapolis, Minnesota, for 2016 Democratic presidential candidates, including Hillary Clinton, Bernie Sanders, Martin O'Malley, Lincoln Chafee and Jim Webb, all of whom were White candidates.

33.     Candidate Wilson nevertheless attended the conference.

34.     The DNC advised him, however, that his candidacy and campaign would not be allowed to participate in any scheduled events and further, that he would not be recognized as a Democratic candidate at the event. Each such event provided meaningful publicity and credibility to candidates' campaign efforts.

35.     Only White candidates were allowed to attend and to speak at the DNC's Minneapolis event.

36.     Candidate Wilson encountered similar resistance from Democratic State Party Committee officials in almost every state in which his campaign, via staff and volunteers, attempted to gain state ballot access.

37.      Candidate Wilson was routinely advised that this campaign would not be allowed State ballot access because it was not "sanctioned" by the DNC.

38.     Mr. Wilson attempted to register as a Presidential Candidate in the following states: California, Mississippi, Texas, Iowa, South Carolina, New York, Ohio, New Hampshire, Florida, Louisiana, Alabama, Illinois, Michigan, Nevada, Maryland, Missouri, North Carolina, Georgia, and in Washington, DC.

39.     He successfully attained ballot access in South Carolina, Mississippi, Iowa, California, Louisiana, Texas, Missouri, Nevada, and Illinois.

40.     In Mississippi, he was required to file a legal action in order to gain ballot access after the State party denied him such.

41.     The Mississippi Supreme Court intervened and reversed lower court rulings thereby requiring his investment of additional resources to successfully achieve ballot access.

> *"We grant Dr. Wilson's petition for interlocutory appeal and order the Secretary of State to add Dr. Wilson's name to the electronic Statewide Election Management System, so that it may be made available through electronic voting machines for the Democratic primary on March 8. We also order that any voting precincts using paper ballots for the March 8 election prepare ballots that include Dr. Wilson as a candidate. However, Dr. Wilson's name shall not be added to any absentee ballots prepared or issued to voters. In this way we insure that military and overseas voters use the same ballot as local absentee voters. Finally, we accept Dr. Wilson's express waiver of any right to challenge absentee ballots going forward.  No motion for rehearing will be allowed and the Clerk of Court is directed immediately to issue the mandate."*  (See Exhibit "F", attached at pp. 19 -20).

42.     Candidate Wilson's inability to gain access in other states was substantially attributed to the DNC's influence and minimalization of Plaintiff's candidacy and campaign efforts including, but not limited, to its communications with State Party Committee officials that Plaintiff in effect was not a "sanctioned" candidate for the Office of the President of the United States.

43.     Debbie Wasserman Shultz ("Ms. Wasserman-Shultz") was the DNC's National Chairperson at the time of its August, 2015, summer conference in Minneapolis.

44.     During that conference, Ms. Wasserman Shultz met with the Plaintiff's representative, Charles Steele, then President of the Southern Christian Leadership Conference, regarding the DNC's treatment of the Plaintiff's campaign, who apprised her of and discussed Candidate Wilson's campaign.

45.     Ms. Wasserman Shultz, despite being apprised of Candidate Wilson's difficulties with the DNC, did nothing to rectify the situation.

46.     The DNC selectively entered licensing agreements with presidential campaign committees, specifically titled: "Agreement Between the DNC and Presidential Campaign Committees Regarding Use of DNC National Voter File Data" (hereinafter referred to as "the Voter Data Licensing Agreement" or "Agreement").   Pursuant to this Agreement, respective candidates enjoyed access to a national computerized compilation of registered democratic voters across the nation.

47.     The Voter Data Licensing Agreement was thus vital to meaningful fundraising and voter identification efforts for all Democratic presidential candidates.

48.     Upon information and belief, White Democratic presidential candidates enjoyed the benefit of its license agreement relationships and corresponding use of the DNC National Voter File Data.

49.     It did not provide the same contractual/license opportunity and benefit to Candidate Wilson.

50.     As a result, only White presidential candidates enjoyed access to the DNC's Voter Data File including, but not limited, to: demographic and geographic data for registered voters (such as name, address and jurisdiction); email addresses; voter registration status; telephone numbers; vote history; commercially acquired consumer data; ethnicity information; political party preference or affiliation, if any; candidate preference data, if any; and other key analytic metrics selected by the DNC.

51.     On December 18, 2015, the Bernie Sanders Presidential Campaign filed a lawsuit against the DNC in which it sought specific performance and breach of contract damages in connection with the subject licensing agreement.

52.     Candidate Wilson invested considerable financial resources of over $1,000,000 in his bid for the presidency; notwithstanding that he formally qualified as a candidate, he had to consistently challenge the DNC and its state organizations for equal access and equal treatment of his candidacy.

53.     The DNC's failure to offer the Plaintiff equal access to its Voter Data File, as it did to other similarly situated White Democratic candidates, was specifically designed and orchestrated to hamper and impede Candidate Wilson's ability to compete for votes on a level playing field and thereby expose the democratic electorate to the substance of his values and platform.

## COUNT I

## BREACH OF IMPLIED CONTRACT

54.     Paragraphs 1 through 53, Facts Common to all Claims, above, are hereby incorporated as though each of the factual allegations was restated herein.

55.     An implied contract arises between parties based upon the conduct of the parties to each other and the accepted relationship between the parties.

56.     In the context of political campaigns, the party apparatus, in this case the DNC, by custom and tradition, acts as a neutral facilitator between competing candidates of the same party when vying for the party's nomination to a particular office.

57.     The DNC broke the covenant of neutrality by its actions in the 2016 Democratic Presidential Primary for the Office of the President of the United States.

58.     Under the administration of Debbie Wasserman Schultz, as National Chairperson of the DNC, the DNC acted to favor one candidate, Hillary Clinton, over all others, including candidate Wilson.

59.     Indicative of the seriousness of this breach of the covenant of neutrality are the comments of former DNC Chairperson, Terry McAuliffe, upon reading the DNC emails leaked by Wikileaks concerning comments by DNC staffers regarding candidate Bernie Sanders, wherein he was quoted as follows:

> "*You've got to run a level playing field.  It's not fair what they wrote about Sen. Sanders; it's outrageous.  If I had been there and seen somebody on my staff write that against Al Sharpton or (Howard)Dean or John Kerry or all the folks who ran when I was there, I would have fired them on the spot.  You just can't do that; your neutral." See Exhibit "H"* http://www.mcclatchydc.com/news/politics-government/election/article92129042.html *(last viewed 4/18/2017)*

60.     Also implied in all contracts is a covenant of good faith and fair dealing which requires each party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.

61.     Defendant DNC breached the implied covenants of neutrality, and the covenant of good faith and fair dealing by refusing to accord Plaintiffs the benefits of the relationship they should have enjoyed as participants in the 2016 Democratic Presidential Primary for the Office of the President of the United States.

62.     As a result of Defendant's breach of these implied covenants Plaintiffs suffered significant financial harm to which they are entitled to be compensated.

## COUNT II

## PROMISSORY ESTOPPEL

63.     Paragraphs 1 through 53, Facts Common to all Claims, above, are hereby incorporated as though each of the factual allegations was restated herein.

64.     The DNC, early on promised to provide assistance to Candidate Wilson in the form of introductions to State Party officials; logistical resources, and general political assistance for his emerging Presidential campaign.

65.     Plaintiffs reasonably relied upon the DNC's representations; further, Mr. Wilson invested significant resources in the development of its presidential campaign based upon the DNC's representations.

66.     Notwithstanding its representations, the DNC denied certain benefits, services and information to Plaintiffs thereby creating a significant detriment to Plaintiffs.

67.     Defendant's breach of its promises caused substantial financial harm to Plaintiff's campaign.

## COUNT III

### RACE DISCRIMINATION IN VIOLATION
### EQUAL RIGHTS UNDER THE LAW,
### 42 USC § 1981

68.     Paragraphs 1 through 53, Facts Common to all Claims, above, are hereby incorporated as though each of the factual allegations was restated herein.

69.     42 USC §1981 provides that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts regardless of race.

70.     The term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 USC §1981(b).

71.     The DNC, as a non-governmental entity, provides logistical support and assistance to the particular campaign activities of its party's political candidates and thus creates an implied contractual relationship between itself and the party's varied candidates.   Withholding and limiting the resources it provides to a candidate can negatively harm a candidate's campaign and

encroach upon the candidate's complete and full enjoyment of the contractual relationship, which is the asserted case here.

72. The DNC operates through state party committees which implement its policies and directives at the various state levels subject to both DNC directives and rules, as well as the state party's own rules and policies which are adopted subject to DNC approval.

73. Upon information and belief, DNC staff members, agents, and/or employees communicated directly (via emails and otherwise) with State Democratic Party Committee members and officials regarding Candidate Wilson's campaign, and the extent to which said campaign should not be recognized, not given access to information, and not allowed to participate in party events.

74. As a result, Candidate Wilson encountered regular hurdles and resistance to his candidacy including, but not limited to racially biased unequal access to information, unequal access to debates and/or candidate fora, party events and meetings, and logistical campaign information, such as the above referenced voter identification information. Additionally, Defendant and/or its agent's actions impeded Candidate Wilson's access to and listing on state presidential ballots.

75. Notwithstanding his meeting federal registration requirements and communicating directly with the DNC regarding his campaign, the DNC refused to sanction his candidacy and to treat it equally in any formal respect beginning with basic communications, and information access, thereby depriving him of the same right as his fellow White candidates to enter into contractually based relationships with the DNC.

76.     As just a couple of specific examples, the DNC never recognized Candidate Wilson's campaign on its website, nor allowed him the benefit of licensing its National Voter Data File, as it did for similarly situated White candidates.

77.     The DNC, therefore, intentionally and maliciously violated the Plaintiffs' rights under 42 USC §1981 to make and enforce contracts on the same basis as White persons and caused Plaintiffs substantial financial harm, and in the case of Plaintiff Willie Wilson, humiliation, embarrassment, and mental anguish and frustration.

78.     Plaintiffs are thus entitled to compensatory damages in an amount to be proven at trial, but not less than all amounts expended by the Plaintiffs in pursuit of the Office of the President of the United States.

## COUNT IV

### CIVIL CONSPIRACY
### 42 USC § 1985

79.     Paragraphs 1 through 53, Facts Common to all Claims, above, are hereby incorporated as though each of the factual allegations was restated herein.

80.     42 USC §1985 provides, in part, that no two or more persons in any State or Territory shall conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States.

81.     The Office of the President of the United States is such an office of the United States.

82.     Defendant DNC, acting through its officers, agents, employees, and other independent contractors and representatives, of more than two (2) persons, collaborated, conspired, and agreed amongst themselves to hamper, impede and sabotage Plaintiffs' campaign for the Office of the President of the United States.

83.     The DNC's actions were deliberate, intentional and designed to cause the harm that it did cause.

84.     The DNC actions, as described herein, have caused the Plaintiffs' significant financial losses, including funds that were expended in Candidate Wilson's presidential campaign.

85.  Defendant DNC's actions impeded, delayed, precluded and interfered with its contractual relationship with Plaintiffs.

86.      Plaintiffs are thus s entitled to compensatory damages from the DNC in an amount to be proven at trial, but not less than all amounts expended by the Plaintiffs in pursuit of the Office of the President of the United States.

***AD DAMNUM***

WHEREFORE, Plaintiffs respectfully urge this Court to find against Defendant DNC, based upon the above referenced common law claims and/or  its violations of Plaintiffs' civil and constitutional rights under, 42 U.S.C. §§1981 and 1985, and to award the following damages:

(a)     Compensatory damages in an amount in excess of $2,000,000.00, the exact amount to be determined at trial, but in no event less than all amounts expended by the Plaintiffs in pursuit of the Office of the President of the United States.

(b)      Punitive damages related to Defendant's violation of Plaintiff's civil and constitutional rights in an exact amount to be determined at trial, but in no event less than $5,000,000.00:

(c)     Attorney's fees and costs pursuant to 42 USC **§**1988;

(d)     Appropriate equitable relief; and,

(e)     Such further relief as this honorable Court deems just and necessary.

## JURY DEMANDED

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Respectfully submitted,

s/Wayne B. Kendall
Georgia Bar No.: 414076
Wayne B. Kendall, P.C.
155 Bradford Square. Suite B
Fayetteville, GA  30215
Telephone: (770) 778-8810
Facsimile: (770) 716-2439
Email: wbkendall2@yahoo.com

s/Donald M. Temple
DC Bar No.  [#408749]
1101 15th Street, N.W., Suite 910
Washington, D.C. 20005
Telephone: (202) 628-1101
Facsimile: (202) 628-1149
Email: dtemplelaw@gmail.com

Attorneys for Plaintiffs

**DATED:** April 19, 2017