# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 19-7137                                      September Term, 2020
                                                 FILED ON: NOVEMBER 23, 2020

WILLIE LEE WILSON AND WILLIE WILSON 2016,
    APPELLANTS

v.

DNC SERVICES CORPORATION, DOING BUSINESS AS DEMOCRATIC NATIONAL COMMITTEE,
    APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00730)

Before: ROGERS and PILLARD, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

## J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia and the briefs of the parties. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons set forth in the attached memorandum, it is

**ORDERED AND ADJUDGED** that the decision of the District Court be affirmed.

Pursuant to Rule 36 of this Court, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

                  **FOR THE COURT:**
                  Mark J. Langer, Clerk

            BY: /s/
                  Michael C. McGrail
                  Deputy Clerk

**MEMORANDUM**

Willie Wilson ran for the 2016 Democratic nomination for President. He and his campaign committee (collectively "Wilson") brought this action for events arising out of the Democratic presidential primary, alleging that the Democratic National Committee conspired with the Hillary Clinton campaign and/or the Secret Service to obstruct his candidacy. The DNC moved for summary judgment. The district court found no genuine issues of material fact and granted the DNC's motion. Because we agree, we affirm.

I.

In reviewing summary judgment, we, like the district court, view all factual allegations in the light most favorable to Wilson. *W. Sur. Co. v. U.S. Eng'g Constr., LLC*, 955 F.3d 100, 104 (D.C. Cir. 2020). Applying that standard, the facts relevant to this dispute are as follows.

During the 2016 Democratic primary, the South Carolina Democratic Party and Congressman Jim Clyburn invited Wilson to speak at "Jim Clyburn's World Famous Fish Fry." The fish fry is a popular event that most candidates seeking the Democratic presidential nomination attend. Wilson's campaign did not confirm he would appear at the event or communicate with the hosts about how to check in upon arrival.  Wilson did, however, attend.  Hillary Clinton, another candidate for President, also attended the fish fry.  Clinton, at that time, was under the protection of the Secret Service. Secret Service established procedures for accessing the candidate waiting area, issuing lapel pins to individuals they authorized to enter.

When Wilson arrived at the fish fry, Secret Service did not allow him or his staff to enter the candidate area because they lacked the lapel pins that Secret Service had issued.  A Secret Service agent told Wilson they would arrest him and his staff if they attempted to enter.  A member of Wilson's staff followed up, and the agent told him that Clinton ordered the Secret Service not to admit Wilson.  Wilson left and called Jaime Harrison, Chair of the South Carolina Democratic Party, who said, "It was a national thing. They took it out of my hands."

Wilson sued the DNC for breach of contract, promissory estoppel, racial discrimination in violation of 42 U.S.C. § 1981, and a civil conspiracy to prevent his candidacy under 42 U.S.C. § 1985. The DNC moved to dismiss all claims under Rule 12(b)(6), and the district court granted the motion as to the breach of contract and promissory estoppel claims.

The district court then scheduled discovery for the remaining claims. The district court's first discovery order, which issued in August 2018, closed fact discovery on January 1, 2019. In December 2018, the district court granted Wilson's consent motion to extend discovery, which included a schedule permitting him to notice depositions as late as January 25, 2019.  The court's order extended the close of fact discovery to March 8, 2019.  Wilson did not try to depose anyone until February 2019, when he sought to schedule depositions for several high-ranking DNC officials and the DNC itself. The officials he sought to depose were: Donna Brazile, the former interim chairwoman of the DNC who wrote a book about the relationship between the DNC and Hillary Clinton's campaign; Amy Dacey, the DNC's CEO; Jaime Harrison, the Chair of the South

Carolina Democratic Party who was present at the fish fry; and Debbie Wasserman Schultz, the DNC's chairwoman at the time of the fish fry. The DNC consented to its own deposition, but moved the district court to quash the depositions of Brazile, Dacey, and Wasserman Schultz. The district court granted the motion, noting that it would not allow depositions of these DNC officials unless Wilson established an evidentiary basis for them.

Wilson identified the following topics for the deposition of the DNC: (1) the DNC's procedures for determining its level of support for a candidate, (2) the procedures for gaining access to voter data, (3) the relationship between the DNC and the Clinton campaign, and (4) the role of the DNC in the fish fry. The DNC designated Patrice Taylor, its Director of Party Affairs, to testify on its behalf under Federal Rule of Civil Procedure 30(b)(6). Wilson deposed Taylor in early March 2019. Taylor answered "I don't know" or "I don't remember" to many questions arguably relevant to the DNC's relationship with the Clinton campaign. Specifically, Taylor answered "I don't know," when Wilson's counsel asked who negotiated the joint fundraising agreement between the DNC and the Clinton campaign, as well as whether there was a reason the DNC did not enter into similar agreements with other candidates. Because Wilson's counsel perceived Taylor to be stonewalling, he made a strategic decision to not ask about the fish fry. Wilson, unsatisfied with Taylor's responses, moved to reopen and extend discovery so that he could depose Brazile, Dacey, and Wasserman Schultz. The district court denied his motion.

The DNC then moved for summary judgment on Wilson's remaining claims. The district court granted the motion. Wilson now appeals the district court's order denying his motion to reopen and extend discovery, the order quashing his deposition subpoenas to DNC officials, and the summary judgment order dismissing his civil conspiracy claim.

II.

We first address the discovery orders, reviewing both for abuse of discretion. *Feld v. Fireman's Fund Ins. Co.*, 909 F.3d 1186, 1199 (D.C. Cir. 2018). A district court may extend discovery for good cause, but good cause is lacking when the party seeking an extension has failed to diligently pursue discovery. *See* Fed. R. Civ. P. 16(b)(4); *Capitol Sprinkler Inspection, Inc. v. Guest Servs.*, 630 F.3d 217, 226 (D.C. Cir. 2011). District courts are not obligated to repeatedly extend discovery periods for a party that doesn't meet deadlines. *See* 6A ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 1522.2 (3d ed. 2020) (collecting cases). Wilson failed to meet multiple deadlines, so the district court did not abuse its discretion by denying his request for more time.

As for the order quashing the depositions, a district court must limit the deposition of a party when the court determines that the information sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Taylor might have provided the information about the fish fry that Wilson wanted if Wilson's counsel had asked for it, but he didn't. Yet Wilson's attorney made a tactical decision not to ask the DNC any questions about the fish fry, even though the district court had already stated it would not allow the other depositions without further support. Courts have long recognized that litigants must bear the consequences of their attorneys' strategic decisions. Wilson "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the

3

consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962). Moreover, the late hour of his deposition requests weighs against him. The district court did not abuse its discretion by not allowing Wilson to depose the DNC officials.

III.

Next, we consider the summary judgment at the heart of Wilson's appeal. As noted above, we review the summary judgment order de novo, affirming if, viewing all facts in the light most favorable to Wilson, there is no genuine dispute of material fact and the DNC is entitled to judgment. *W. Sur. Co.*, 955 F.3d at 104.

Wilson argues that the DNC violated 42 U.S.C. § 1985(3), which prohibits any conspiracy between two or more persons "to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner" to a presidential candidate. Wilson raises two theories to establish a conspiracy: first, that the DNC and the Clinton campaign directly agreed to bar his entry to the fish fry, and second, that the DNC was the alter ego of the Clinton campaign.

Both of Wilson's conspiracy theories are unpersuasive. As evidence of a direct conspiracy, Wilson offers Jonathan Metcalf's testimony about an "unwritten rule" that the DNC had to approve speakers, Jaime Harrison's statement that the fish fry was a "national thing," the well-publicized joint fundraising agreement and memorandum of understanding addressing staffing between the DNC and the Clinton campaign, and a Secret Service agent's statement to a Wilson staffer that Clinton gave the order to exclude him. That isn't enough. Jaime Harrison testified at his deposition that no "unwritten rule" existed. Jim Clyburn, not the DNC, organized the fish fry and controlled who spoke at the event. Next, the text of the joint fundraising agreement and memorandum of understanding reaffirm the DNC's neutrality. The final piece of evidence is inadmissible double hearsay from an unidentified speaker. While reviewing summary judgment we only consider evidence that a party could present in an admissible form. Fed. R. Civ. P. 56(c)(2); *see also United States v. Beckham*, 968 F.2d 47, 50–51 (D.C. Cir. 1992) (explaining that the co-conspirator exception to hearsay inadmissibility can pierce one level of hearsay when it is not the only evidence of a conspiracy). But more fundamentally, none of this evidence ties the DNC itself to the decision to bar Wilson. Wilson's alter ego theory is similarly unpersuasive. Even assuming that a "conspiracy" under section 1985(3) between an entity and its alter ego is possible, Wilson does not establish a factual basis for attributing the Clinton campaign's actions to the DNC. Wilson again points to the memorandum of understanding between the DNC and the Clinton campaign to demonstrate the alter ego relationship, but that memo explicitly reserves the DNC's right to enter into similar agreements with other candidates. That hardly makes the DNC the Clinton campaign's alter ego.

IV.

For the foregoing reasons, we affirm the judgment of the district court.